UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHARLET R. HUNGERFORD,   )  <br>                                                       )  <br>              Plaintiff,                        )  <br>                                                       )  <br>              v.                                   )           No. 1:17-cv-02407-TWP-TAB  <br>                                                       )  <br>NANCY A. BERRYHILL Deputy Commissioner   )  <br>for Operations, Social Security Administration,   )  <br>                                                       )  <br>              Defendant.                       )  | |

**REPORT AND RECOMMENDATION ON SOCIAL SECURITY APPEAL**

**I.  Introduction**

In this Social Security appeal, Plaintiff Sharlet R. Hungerford argues the Administrative Law Judge failed to properly consider her fibromyalgia and migraine headaches.  Hungerford contends the ALJ's fibromyalgia analysis was perfunctory.  And for both fibromyalgia and migraines, Hungerford maintains the ALJ ignored and misconstrued evidence and failed to obtain a medical expert opinion on equivalency, which resulted in the ALJ impermissibly relying on her own lay opinion.  Defendant Nancy Berryhill responds that the Court should affirm the ALJ's decision because the decision as a whole supports the ALJ's conclusions and the ALJ acted within her discretion in deciding not to seek an additional expert opinion.  As explained below, the Magistrate judge recommends that Hungerford's request for remand [Filing No. 15] be granted because the ALJ failed to adequately analyze Hungerford's fibromyalgia and migraines.

**II.  Background**

Hungerford has a high school education and has worked as a bartender, housekeeper, hand packager, and as an order taker.  Hungerford sought disability insurance benefits and supplemental security income in May 2014, alleging disability beginning in January 2013.  Her

application was denied initially and upon review. Following a hearing, the ALJ found that Hungerford was not disabled. Hungerford appealed the decision, but the Social Security Administration adopted the ALJ's decision over Hungerford's objections.

In reaching her decision, the ALJ followed the SSA's five step sequential evaluation process. The ALJ found Hungerford satisfied step one because she had not engaged in substantial gainful activity since before her alleged onset date. At step two, the ALJ found Hungerford had several severe impairments: "osteoarthritis of the knees, degenerative disc disease of the lumbar spine, osteoporosis, fibromyalgia, headaches, depression, and posttraumatic stress disorder." [Filing No. 13-2, at ECF p. 13, R. at 12.] At step three, the ALJ found Hungerford did not have an impairment or combination of impairments that met or medically equaled one of the listings in 20 C.F.R. pt. 404 sub. pt. P. app. 1. The ALJ considered whether Hungerford's condition met or equaled Listings 1.02, 1.04, 12.04, 12.06, and 14.09D. Hungerford argues the ALJ should have also considered Listing 11.03.

Before reaching step four, the ALJ determined that Hungerford had the residual functional capacity to do light work, subject to postural and manipulation restrictions. The ALJ also limited Hungerford to simple and routine tasks with no more than simple, routine changes in her work environment. At step four, the ALJ considered Hungerford's RFC and testimony from a vocational expert and determined that Hungerford was capable of performing past relevant work as a housekeeper.

### III.   Discussion

Hungerford raises three principal arguments. First, Hungerford argues the ALJ's consideration of Listing 14.09D was perfunctory and that the ALJ played doctor by looking for specific evidence, and then deciding against Hungerford when she did not find that evidence. Second, Hungerford challenges the ALJ's consideration of her migraines, arguing the ALJ failed

2

to address Listing 11.03 altogether and did not consider her limitations due to migraines.  Third, Hungerford contends the ALJ necessarily played doctor by failing to obtain an expert opinion that specifically addressed whether her impairments medically equaled Listings 14.09D or 11.03.

The Court reviews ALJs' decisions to ensure they apply the correct legal standard, and their decisions are supported by substantial evidence.  *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). It "must be more than a scintilla but may be less than a preponderance."  *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007).  The Court's review is deferential—it cannot reweigh the evidence or supplant the ALJ's judgment with its own.[1]  *Summers*, 864 F.3d at 526.

Claimants are presumptively eligible for benefits if their impairments meet or equal one or more of the impairment listings.  *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015); 20 C.F.R. § 404.1520(d).  Claimants may satisfy a listing's requirements by meeting the listed criteria or by showing that their symptoms medically equal the severity of the listing.  *Minnick*, 775 F.3d at 935; 20 C.F.R. § 404.1526.  "Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue."  *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) (citing 20 C.F.R. § 404.1526(b)).  ALJs "must discuss the listing by name and offer more than a perfunctory analysis of the listing."  *Id.* at 668.

### a. Fibromyalgia and Listing 14.09D

Hungerford makes two arguments specific to the ALJ's discussion of Listing 14.09D as it relates to her fibromyalgia: 1) the ALJ's analysis was perfunctory and 2) the ALJ played doctor

---

[1] In the "Standard of Review" section of Hungerford's brief there are several instances where Hungerford means "standard," but for some reason says "Stewart."  This is not the first time the Court has noticed this error in a brief submitted by Hungerford's counsel.  While the error causes minimal confusion, Counsel should be more careful.

3

by failing to address contradictory evidence and by assuming Hungerford's treatment was conservative. Hungerford's second argument is persuasive.

No listing specifically addresses fibromyalgia, but ALJs are nonetheless required to determine whether the claimant's condition medically equals another listing. *Soc. Sec. Ruling 12-2p, Titles II and XVI: Evaluation of Fibromyalgia*, SSR 12-2P, 2012 WL 3104869, at *6 (July 25, 2012). Listing 14.09D, which is the listing for inflammatory arthritis, is expressly highlighted as an example of a listing that a claimant's fibromyalgia condition may equal. *Id.* Listing 14.09D requires:

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
>> 1. Limitation of activities of daily living.
>> 2. Limitation in maintaining social functioning.
>> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. pt. 404, sub. pt. P, app. 1.

At first glance, the ALJ's consideration of Listing 14.09D appears perfunctory—the paragraph is a mere three sentences. However, the ALJ clearly indicates that the paragraph is not the end of the discussion; the facts are discussed later. [Filing No. 13-2, at ECF p. 15, R. at 14.] The ALJ signaled, "Based on the discussion below . . ." and "At later stages of the sequential evaluation, I will consider . . .". [*Id.*] The Court does not discount a step three analysis "simply because it appears elsewhere in the decision." *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015). The instant case is distinguishable from *Barnett*, 381 F.3d at 670, and *Minnick*, 775 F.3d at 935, where the entire analyses were two sentences. It is likewise distinguishable from *Helterbrand v. Berryhill*, 1:17-CV-01318-TAB-JMS, 2017 WL 6523409, at *2 (S.D. Ind. Dec.

4

21, 2017), where the ALJ provided no indication that "evidence strewn throughout later sections provide[d] the factual support for [the step three] conclusion."

Hungerford next argues the ALJ played doctor "by deciding what should be found in the evidence, and then denying Hungerford benefits when [s]he did not find those preconceived items." [Filing No. 15, at ECF p. 19.] Hungerford maintains that the record shows evidence that her fibromyalgia is debilitating, but the ALJ ignored it and instead focused on her assumption that Hungerford's treatment was conservative. Despite the Deputy Commissioner's assertion that the ALJ's analysis was sufficient, the ALJ's consideration of Listing 14.09D was inadequate and should be remanded.

ALJs must make their determinations "based on testimony and medical evidence in the record. And, as [the Seventh Circuit] has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Assuming that a treatment plan is conservative without an expert opinion can be playing doctor. *Hurlbut v. Colvin*, No. 15 CV 50270, 2017 WL 497774, at *2 (N.D. Ill. Feb. 7, 2017). Though the ALJ in *Hurlbut* summarized the claimant's treatment history, the court still concluded, "The supposedly conservative nature of the treatment is not self-evident to this Court, and the question requires medical expertise to answer." *Id.* When ALJs make assumptions about medical evidence, they risk getting it wrong. *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014), *as amended on denial of reh'g* (Oct. 24, 2014) (finding the ALJ mistakenly assumed a negative MRI contradicted the claimant's migraine assertions, when in fact, the purpose of the MRI is to rule out other non-migraine causes of headache that would show up on an MRI).

Though no expert offered an opinion specifically on Listing 14.09D, the ALJ analyzed whether the evidence showed a marked limitation of one of the three criteria included in the listing—activities of daily living, maintaining social functioning, or completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. [Filing No. 13-2, at ECF p. 15, R. at 14.] The ALJ clearly and adequately considered Hungerford's activities of daily living. [*Id.* at ECF p. 20, R. at 19.] Similarly, the ALJ analyzed her social functioning, noting that, though Hungerford was diagnosed with posttraumatic stress disorder, depression, and attention deficit/hyperactivity disorder, her Global Assessment of Functioning score was 55, which indicated only moderate—as opposed to marked—difficulties in social functioning. [*Id.* at ECF p. 19, R. at 18.]

However, the ALJ failed to support her conclusion that the last criterion was not met. Hungerford points to evidence of interrupted sleep, poor memory, and distraction, which the ALJ did not address. The ALJ only mentioned concentration, persistence, or pace twice in her decision—once to say Hungerford's depression and anxiety caused moderate difficulties [*Id.* at ECF p. 15, R. at 14] and once in her RFC conclusion that Hungerford should avoid complex tasks. [*Id.* at ECF p. 21, R. at 20.] The ALJ did not provide citations or analysis either time. [*Id.* at ECF pp. 15, 21, R. at 14, 20.] Further, the ALJ did not ever indicate that she considered whether Hungerford's fibromyalgia pain (or alleged painful, sleepless nights) limited her ability to concentrate and timely complete tasks.

When the ALJ did analyze Hungerford's pain, she discounted it in part because she concluded the treatment was conservative. This conclusion is not supported by the record. As the ALJ noted, Hungerford took Flexeril and Gabapentin, had Kenalog and Toradol injections, and tried the narcotic Norco. [*Id.* at ECF p. 18, R. at 17.] But the ALJ failed to note that

Hungerford continued to use various other narcotics. [*Compare id. with* Filing No. 13-9, at ECF pp. 7, 11-12, R. at 419, 423-24 (listing Hungerford's prescriptions for hydrocodone and tramadol products).] When Hungerford reported the injections were not very effective, her rheumatologist encouraged aerobic exercise and warm water therapy. [Filing No. 13-2 at ECF p. 20, R. at 21.] The ALJ called this treatment "very conservative" because Hungerford was not referred for "more aggressive treatment." Yet, no medical source opined that the treatment was conservative, and the ALJ did not say what a more aggressive treatment for fibromyalgia would be. Given that there is no cure for fibromyalgia, *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996), these pain management efforts may indicate that Hungerford was out of more aggressive options, rather than taking a conservative course. Like in *Hurlbut*, 2017 WL 497774, at *2, the question of whether this treatment plan is conservative requires medical expertise to answer because it is not self-evident.

The Deputy Commissioner argues Hungerford waived any challenge to the ALJ's evaluation of the three criteria by "not challeng[ing] the ALJ's evaluation of the evidence with respect to her daily activities, social functioning, or concentration." [Filing No. 18, at ECF p. 5.] However, Hungerford presents evidence that contradicts the ALJ's findings with respect to the third criterion and questions the adequacy of the ALJ's consideration. By challenging the evidence on which the ALJ relied to reach her conclusion about the criterion, Hungerford necessarily challenges the ALJ's conclusion. Though Hungerford could have made the argument more clearly, she did not waive it.

### b. Migraines and Listing 11.03

Hungerford argues the ALJ failed to address whether her migraines medically equaled Listing 11.03 and failed to consider the effect of frequent migraine headaches on her ability to work fulltime. The Deputy Commissioner responds that the ALJ's consideration was sufficient,

7

and any error in failing to expressly consider Listing 11.03 was harmless.  The ALJ's failure to address Listing 11.03 was harmless.  However, the ALJ failed to adequately consider Hungerford's migraine allegations in her RFC analysis, which requires remand.

Like with fibromyalgia, there is no migraine-specific listing, but ALJs commonly examine whether a claimant's migraine headaches meet or equal Listing 11.03, which is for epilepsy.  Keller v. Colvin, 1:13-CV-00104-TWP, 2014 WL 948889, at *5 (S.D. Ind. Mar. 10, 2014) (citing Program Operations Manual System (the primary source of information used by Social Security employees to process claims)).  Listing 11.03 requires:

> Nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.  With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. § pt. 404, sub. pt. P, app. 1.[2]

The ALJ did not address the listing in her step three analysis, but any error in failing to do so was harmless.  Remand is not warranted when the claimant cannot show evidence that she meets the listing's criteria.  Rice v. Barnhart, 384 F.3d 636, 369-70 (7th Cir. 2004).  As the Deputy Commissioner highlights, to satisfy Listing 11.03, Hungerford must show she had debilitating migraines more than once a week "in spite of at least three months of prescribed treatment."  There is no evidence in the record that Hungerford was prescribed treatment, followed that treatment, and the migraines nonetheless persisted.  Instead, agency doctors Joshua Eskonen and M. Brill both noted Hungerford's migraines as a secondary diagnosis and that her impairments do not equal any listing.  [Filing No. 13-3, at ECF p. 6-7, 18-19, 35, 38-39, R. at 73-

---

[2] The SSA updated the listings and moved the epilepsy listing to 11.02.  However, at the time of the ALJ's decision on June 29, 2016, the epilepsy listing was still 11.03.

74, 85-86, 102, 105-06.] Further, Hungerford asserts she had three to four migraines per month. Given that there are four weeks in a month, she is unable to establish the requisite frequency of more than one per week.

Though her argument is not particularly clear, Hungerford also contends the ALJ failed to justify her conclusion that Hungerford's migraines would not prevent her from engaging in competitive employment, which implicates the ALJ's RFC analysis. Hungerford points to evidence that she had three or four migraines a month and each lasted around three days. Hungerford claims that she treated her migraines by lying on her bed in total darkness with a cold washcloth on her head, and she was unable to physically do anything on those days. The Deputy Commissioner responds that the ALJ adequately supported her decision.

The ALJ's lack of discussion and consideration of migraine evidence in her RFC analysis requires remand. The ALJ does not address the conflicting evidence to which Hungerford points. Problematically, most of the Deputy Commissioner's citations to the ALJ's RFC analysis are to the ALJ's analysis of other impairments. The ALJ noted that Hungerford's rheumatologist concluded Hungerford's neck and back pain likely came from her fibromyalgia and degenerative disk disease, but this discussion was in the context of Hungerford's joint pain and never mentioned her migraines. [Filing No. 13-2, at ECF p. 18, R. at 17.] The discussion does not, as the Deputy Commissioner contends, incorporate a migraine analysis into the ALJ's fibromyalgia analysis. The Deputy Commissioner also points to the ALJ's discussion of Hungerford's activities of daily living, but this discussion concerned Hungerford's ongoing fibromyalgia pain. [*Id.* at ECF p. 20, R. at 19.] In that discussion, the ALJ addresses things Hungerford said she could do on a normal day, but Hungerford claimed she could not do any of that when she had a

9

migraine.  [*Compare* Id. *with* Filing No. 13-6, at ECF p. 16, R. at 220.]  The ALJ did not discuss this contradiction.

The only discussion of evidence related to migraines that the Deputy Commissioner points to is of a CT scan of Hungerford's head.  [Filing No. 18, at ECF p. 9 (citing Filing No. 13-2, at ECF p. 17, R. at 16).]   However, though it is proper for the ALJ to consider objective testing,  20 C.F.R. § 404.1529(c)(2), the Seventh Circuit has acknowledged that the purpose of such testing with respect to migraines is to rule out other possible causes, like a tumor.  *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014), *as amended on denial of reh'g* (Oct. 24, 2014).  Thus, this negative scan supports Hungerford's claim of migraines and does not imply Hungerford's migraines are less debilitating than she asserts.

Therefore, remand is appropriate because the decision offers no real analysis or consideration of the limiting effects of Hungerford's migraines on her ability to work.

### c.  Obtaining Additional Medical Expert Opinions

Hungerford argues the ALJ erred by failing to obtain an opinion from a medical expert on whether her impairments medically equaled Listings 14.09D or 11.03.  The thrust of her argument is: whether Hungerford's impairments medically equal a listing can only be determined by a medical expert, and no expert gave an opinion specifically on Listings 14.09D or 11.03.  Therefore, she contends, the ALJ played doctor by relying on her own lay opinion on the listings.  The Deputy Commissioner responds that the ALJ did not abuse her discretion in deciding not to call an additional expert.  The Deputy Commissioner maintains that Drs. Eskonen and Brill opined that Hungerford's impairments did not equal any listing, so the ALJ had discretion in deciding whether to seek an additional opinion.

Social Security Ruling 96-6p sets the standard for when an ALJ must obtain an additional opinion regarding medical equivalence:

> [A]n [ALJ] and the Appeals Council must obtain an updated medical opinion from a medical expert in the following circumstances:
>
> - When no additional medical evidence is received, but in the opinion of the [ALJ] or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
> - When additional medical evidence is received that in the opinion of the [ALJ] or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.
>
> When an updated medical judgment as to medical equivalence is required . . . in either of the circumstances above, the [ALJ] must call on a medical expert.

SSR 96-6p, 1996 WL 374180, at *3-4.

Of course ALJs are required to consider an expert's opinion on the issue of medical equivalence, 20 C.F.R. § 404.1526(b), but the requirement to get an additional opinion is only triggered when one of the circumstances in SSR 96-6p is met. Indeed, the Seventh Circuit reasoned that "the need for additional tests or examinations will normally involve a question of judgment, and we generally defer to the ALJ's determination whether the record before her has been adequately developed." *Wilcox v. Astrue*, 492 F. App'x 674, 678 (7th Cir. 2012). Likewise, the Southern District of Indiana ruled "the decision to summon a medical expert is discretionary." *Magee v. Colvin*, No. 1:13-CV-01723-TWP-DKL, 2015 WL 1417619, at *5 (S.D. Ind. Mar. 26, 2015).

Hungerford does not show the ALJ abused her discretion in deciding not to obtain an additional expert opinion. Though neither of the agency doctors expressly considered Listings 14.09D or 11.03, each noted Hungerford's fibromyalgia and migraines, and each concluded that Hungerford's impairments did not medically equal any listing. [Filing No. 13-3, at ECF p. 6-7, 18-19, 35, 38-39, R. at 73-74, 85-86, 102, 105-06.] The ALJ did not abuse her discretion by

11

relying on these opinions in deciding to not obtain an additional expert opinion.³  Though Hungerford points out that the agency doctors did not look at evidence past October 30, 2014, she does not point to any new evidence from after that date, let alone evidence that would show the ALJ abused her discretion by not obtaining an additional expert opinion.  Further, Hungerford was represented by an attorney at her hearing.  When a claimant is represented by an attorney, ALJs are permitted to presume the claimant presented her best case for benefits, *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007), which includes the inference that the claimant "decided that another expert opinion would not help her." *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010).

## IV.  Conclusion

For these reasons, the Court should grant Hungerford's request [Filing No. 15] and remand under sentence four of 42 U.S.C. § 405(g) for further consideration of Hungerford's fibromyalgia and migraines.  Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1).  Absent a showing of good cause, failure to file objections within 14 days after service shall constitute a waiver of subsequent review.

Date: 7/6/2018

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution: All ECF-registered counsel of record by email.

---

³ The ALJ's above-noted error in executing her analysis of Listing 14.09D does not imply that she abused her discretion in deciding whether she needed additional information to reach her conclusion.  Further, the mere fact that she considered the listing in her decision shows only that the ALJ believed Hungerford presented a colorable equivalence claim.  It does not show the ALJ thought an equivalence finding would be reasonable.